## Metcalf v Safirstein Metcalf, LLP

2024 NY Slip Op 34380(U)

December 18, 2024

Supreme Court, New York County

Docket Number: Index No. 650777/2024

Judge: Andrew Borrok

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

-------------------------------------------------------------------X

ELIZABETH METCALF,

Plaintiff,

- v -

SAFIRSTEIN METCALF, LLP, PETER SAFIRSTEIN, and
SHEILA FEERICK

Defendants.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 650777/2024 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (MS001) 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 31, 35, 36, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55 were read on this motion to/for                    JUDGMENT - SUMMARY                    .

In this action arising out of a thorny post-dissolution partnership dispute between two partners of the former law firm, Safirstein Metcalf LLP, defendant Peter Safirstein (Safirstein) moves, pursuant to CPLR 3212, for an order granting partial summary judgment dismissing certain paragraph subsections contained plaintiff Elizabeth Metcalf's (Metcalf's) Second Cause of Action of her complaint (NYSCEF # 15). In response, Metcalf has cross-moved, pursuant to CPLR 3212, for summary judgment on her First Cause of Action for an accounting, and, pursuant to CPLR 3211(a)(7), for an order dismissing Safirstein's counterclaim for breach of fiduciary duty (NYSCEF # 36). Both the motion and cross-motions are opposed. The court held oral arguments these motions on December 10, 2024.

For the following reasons, as well as those articulated during the December 10 hearing, Safirstein's motion and Metcalf's cross-motions are denied.

## Background

The following facts are drawn from the parties' Rule 19-a statements and their accompanying affirmations and exhibits, as well as the allegations set forth in support of Safirstein's counterclaims. For those facts pertinent to the motion and cross-motion for summary judgment, the facts are undisputed unless otherwise noted. And for those facts relevant to the cross-motion to dismiss, the facts are accepted as true solely for purposes of resolving that motion.

650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL
Motion No. 001

Page 1 of 19

[* 1]

*Underlying Accounting Dispute Between Metcalf and Safirstein*

In 2016, Safirstein and Metcalf formed Safirstein Metcalf LLP (SM LLP) (*see* NYSCEF # 28 – Deft 19-a ¶ 1; NYSCEF # 43 – Pltf 19-a ¶ 1). SM LLP was established as a plaintiffs-side law firm representing clients on a contingency basis in a variety of shareholder, antitrust, and consumer class-action lawsuits (Pltf 19-a ¶ 2; Deft 19-a ¶¶ 4-5; NYSCEF # 24 – Safirstein aff ¶ 3; NYSCEF # 37 – Metcalf aff ¶ 15). SM LLP had one employee, defendant Sheila Feerick, who was responsible for cultivating client relationships (Metcalf aff ¶ 23). Metcalf avers that Feerick was paid a bonus when SM LLP received a substantial contingency fee on a matter, but she did not share in the firm's profits (*id.*)

At the time of formation, SM LLP was a 50/50 partnership and did not have a written partnership agreement (Deft 19-a ¶¶ 2-3; Pltf 19-a ¶¶ 3-4; Metcalf aff ¶¶ 16-17). Together, Metcalf and Safirstein shared in SM LLP's profits equally, and each paid 50 percent of SM LLPs taxes annually (Pltf 19-a ¶¶ 5, 7; Metcalf aff ¶¶ 19, 21). Safirstein was the managing partner of SM LLP and maintained control over SM LLP's bank accounts (Pltf 19-a ¶¶ 8-9). Although Metcalf and Safirstein disagree whether *all* decisions were made jointly (*compare* Pltf 19-a ¶ 6, *and* Metcalf aff ¶ 20, *with* NYSCEF # 53 – Deft 19-a Resp ¶ 6), there is no dispute that they jointly made at least some decisions on behalf of SM LLP (*see* Deft 19-a Resp ¶ 6).

Although the reasons why are sharply disputed (*compare* NYSCEF #2 – compl ¶¶ 27-79 [alleging a scheme by Safirstein to take cases and clients from SM LLP to a new firm] *with* NYSCEF # 14 – CC ¶¶ 41-82 [alleging a scheme by Metcalf to evade work obligations while continuing to derive partnership compensation benefits]), after the onset of the COIVD-19 pandemic, the relationship between Metcalf and Safirstein deteriorated (*see* Metcalf aff ¶¶ 25-53). Given this deterioration, on November 10, 2020, Safirstein emailed a letter to Metcalf announcing the termination of SM LLP effective December 31, 2020 (Pltf 19-a ¶ 10). In response, on November 27, 2020, Metcalf circulated a draft separation agreement to Safirstein, and on December 3, 2020, Safirstein, copying Feerick, provided comments on the draft, including proposed terms reducing Metcalf's compensation vis-à-vis Safirstein (*see id.* ¶¶ 11-13). Despite this back-and-forth, Safirstein had an abrupt change of heart and retracted his termination letter on December 18, 2020 (*see* Pltf 19-a ¶ 14). Metcalf contends that she still suggested that the parties proceed with dissolution, but Safirstein coerced her to continue with SM LLP (Metcalf aff ¶¶ 44-45). Ultimately, Metcalf agreed to continue working with Safirstein on the condition that she receive copies of SM LLP's bank statements (*id.* ¶ 46).

This return to normalcy in the parties' partnership was apparently short-lived (*see* Metcalf aff ¶¶ 47-48). On December 11, 2021, Metcalf emailed Safirstein regarding the status of certain aviation-related lawsuits being handled by SM LLP (Pltf 19-a ¶ 15). Two days later, on December 13, 2021, Metcalf demanded "all the

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
**Motion No. 001**

**Page 2 of 19**

2 of 19

documents" in Safirstein's possession for all shareholder derivative lawsuits (i.e. the "derivative matters") being handled by SM LLP and a third-party frequent collaborating law firm to extent "created [between] January 1, 2020, through the end of 2021" (*id.* ¶ 16). Safirstein replied that same day, explaining that "[t]here [were] no derivative matters" created during this period about which Metcalf was unaware (*id.* ¶ 17; Deft 19-a Resp ¶ 15).[1]

The next day, on December 14, 2021, Metcalf sent a notice of dissolution to Safirstein, dissolving SM LLP effective December 31, 2021 (Deft 19-a ¶ 6; Pltf 19-a ¶ 19; NYSCEF # 41 – Dissolution Notice). As part of her notice, Metcalf circulated a list of demands concerning the following topics: (1) "Tax Reimbursements,"[2] (2) "Books and Records Demands,"[3] and (3) "Distribution Demands"[4] (Pltf 19-a ¶ 20; Dissolution Notice at 3-4). The Dissolution Notice also stated that (a) Metcalf and Safirstein may continue to work on SM LLP matters during the winding-up period, and (b) "[a]ll SM LLP Matters worked on by" Safirstein, Metcalf or Feerick "before 12/31/21 are assets of SM LLP" (Dissolution Notice at 2, 4). The parties agree that Safirstein did not send the majority of the documents demanded by Metcalf in the Dissolution Notice (Pltf 19-a ¶ 21; Deft Resp ¶ 21). However, Safirstein maintains that the reason was because Metcalf's document demands are improper and excessive (*see* Deft Resp ¶ 22).

The parties do not dispute that Metcalf has a right to a post-dissolution accounting of SM LLP's assets (Pltf 19-a ¶ 23; Deft Resp ¶ 23). To apparently facilitate this process, Safirstein suggested on December 20, 2021, that SM LLP perform one accounting using a "mutually agreed accountant" at SM LLP's expense (Deft Resp ¶ 24; NYSCEF # 19 – Dec. 20, 2021 Ltr at 3; NYSCEF # 46 – Dec. 21, 2021 Ltr at 2). Metcalf, however, rejected this proposal as premature (Deft Resp ¶ 25; NYSCEF # 46 – Dec. 21, 2021 Ltr at 2). Later, on December 29, 2021, Safirstein sent to Metcalf monthly bank statements for SM LLP's bank accounts for 2021, and on January 19, 2022, Safirstein sent Metcalf a letter requesting her input on a list of 35 pending and prospective matters in which SM LLP had a fee interest (*see* Deft Resp ¶¶ 26-28; Metcalf aff ¶ 56; NYSCEF # 47 – Jan. 19, 2022 Ltr at 1-2).

---

[1] Metcalf later clarified that she was seeking all documents, regardless of her awareness (Pltf 19-a ¶ 18; Metcalf aff ¶ 52; NYSCEF # 40).

[2] Specifically, Metcalf demanded that SM LLP "immediately send tax reimbursement distributions" to her (Dissolution Notice at 3; Deft 19-a Resp ¶ 20).

[3] This request reiterated Metcalf's December 13, 2021, demand, asking for (i) "all the documents created January 1, 2020 through the end of 2021 in [Safirstein and Feerick's] possession regarding all SM LLP derivative matters or potential derivative matters," (ii) all the documents created January 1, 2020 through the end of 2021 in their possession regarding "all HGT Law [i.e., the third-party collaborating law firm] matters or potential matters," including "FAA related matters," "FAA FOI requests," "FAA FOIA results," the "analysis of all FAA FOIA results," retention agreements, and referral agreements, (iii) all emails concerning these same topics, and (iv) all "monthly bank statements for the SM LLP bank account for 2021" (Dissolution Notice at 3-4; Deft 19-a Resp ¶ 20).

[4] This included a demand that Metcalf "receive 90% of" SM LLP's bonuses and distributions" and that distributions be paid within 10 days of receipt of any revenue" (Dissolution Notice at 4).

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
**Motion No. 001**                                                                 **Page 3 of 19**

3 of 19

[* 3]

Safirstein maintains that Metcalf did not indicate that any matter was missing from this list (*see* NYSCEF # 51 – Safirstein opp aff ¶ 5).

Overall, Safirstein contends, Metcalf has received (1) true and complete copies of SM LLP bank statements from January 2021 to April 2024, which purportedly reflect all of SM LLP's transactions (e.g., legal fees received, reimbursement of expenses, and payments to Feerick), (2) an accounting of each SM LLP matter transferred to Safirstein Law (SL), (3) information concerning the overall settlement amount obtained on former SM LLP matters and related fee apportionment between SM LLP and SL,[5] and (4) unfettered access to SM LLP's accountants and tax returns (*see* Deft 19-a Resp ¶¶ 30-34; Safirstein opp aff ¶¶ 4-6). Metcalf contends that the information provided by Safirstein to date is incomplete and does not give a full accounting of SM LLP's affairs (Metcalf aff ¶¶ 77-78). But Safirstein retorts that Metcalf has not explained what additional documents she needs to assist with her understanding of SM LLP's bank statements (Deft 19-a Resp ¶ 35).

Meanwhile, with Metcalf triggering dissolution, Safirstein represented to Metcalf that he would agree to notify SM LLP's clients "without disparagement of any Firm principal" that the firm is dissolving and that, in light of SM LLP's dissolution, the clients would need to "choose successor counsel, whether it be [] Safirstein, [Metcalf], or another lawyer or law firm" (Deft 19-a ¶ 8; Dec. 20, 2021 Ltr at 2). Accordingly, on December 23 and 31, 2021, Safirstein sent SM LLP's clients substantially identical letters advising them that SM LLP would be dissolving as of December 31, 2021, effective January 1, 2022, and that thereafter Safirstein would be practicing law at SL, Feerick would be joining this new firm, and Metcalf would also be continuing to practice law (Deft 19-a ¶ 9; Safirstein aff ¶ 5; NYSCEF # 26). The letter continued that each client had "the right to transfer [their] matters to [SL] or to Elizabeth Metcalf" or to "retain other counsel or to take possession of the

---

[5] As more fulsomely addressed in connection with Metcalf's motion, by order to show cause, for a preliminary injunction (MS002), one of the most hotly contested fee allocations relates to *In re Namenda Indirect Purchaser Antitrust Litigation*, 1:15-cv-06549 (S.D.N.Y.), which was a matter originally assigned to SM LLP in 2020 and constituted its largest matter (*see* Metcalf aff ¶¶ 30, 54-55, 61-72). Metcalf alleges that, upon settlement of the *Namenda* matter, Safirstein demanded a greater percentage of the post-dissolution cut of fees assigned to SM LLP in addition to separate fees to be paid out to SL for post-dissolution work (*id.* ¶ 61). Metcalf explains that *Namenda* was filed in August of 2015 and settled on October 4, 2022 (i.e., following the dissolution of SM LLP) (*id.* ¶ 62). Metcalf continues that the overall payment received by Safirstein related to *Namenda* was $5,570,865.71 in attorneys' fees, $2,335,901.53 in expense reimbursements, and $217,585.38 in personal reimbursements (*id.* ¶¶ 63-64). Metcalf then contends that, although SM LLP recorded 9,115.7 hours to *Namenda* up to the firm's dissolution date and SL recorded only 965.9 hours after dissolution, Safirstein informed her that he would give SL 40% of the *Namenda* fees, with the remaining 60% being distributed to SM LLP (*id.* ¶¶ 65-67). Metcalf objected to this allocation and, as a result, demanded that all money received in connection with *Namenda* be put into escrow (*id.* ¶¶ 68-70). Despite agreeing to escrow these funds, Metcalf asserts, Safirstein nevertheless paid Feerick $1.7 million in fees from the *Namenda* matter and also disbursed other funds that reduced the available amount for distribution (*id.* ¶¶ 71-72).

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
**Motion No. 001**

**Page 4 of 19**

files if you choose to do so" (Deft 19-a ¶ 10). Each client was then directed to review Appendix A to the letter, which (i) set forth the matters in which SM LLP represented the client and (ii) provided the client with the affirmative option to indicate if, moving forward, he/she/it would be represented by Safirstein, Metcalf, or other counsel (*id.* ¶¶ 10-11).

Metcalf maintains she never discussed the contents of the letter with Safirstein (Metcalf aff ¶ 58). Nevertheless, copies of these client letters were provided to Metcalf at the same time they were sent to clients (Deft 19-a ¶ 12). Upon receipt, Metcalf demanded that Safirstein retract them, explaining that the letters were "completely incorrect" because "[a]ll SM LLP matters initiated prior to 12/31/21 will continue to be handled by SM LLP" and "SM LLP DOES NOT TERMINATE until all of these matters are wound up" (NYSCEF # 22 – Dec. 23, 2021 Ltr at 1 [emphasis in original]). Safirstein did not retract the letter, and each of SM LLP's clients indicated its intent to transfer files to SL as new counsel (Deft 19-a ¶ 15). Upon dissolution, all of the contacted SM LLP clients were represented by SL, with SM LLP retaining a charging lien for its share of fees in those matters transferred to SL (*id.* ¶¶ 16-17).

Metcalf commenced this action on February 13, 2024, asserting causes of action for accounting against SM LLP and Safirstein, breach of fiduciary duty against Safirstein, aiding and abetting breach of fiduciary duty against Feerick, and money had and received against Feerick (NYSCEF # 2 – compl ¶¶ 116-142). In seeking an accounting, Metcalf alleges that she has demanded access to SM LLP's bank accounts, bank statements, and books and records, but Safirstein has not adequately responded to those requests and has prevented her from determining the value of her 50% interest in SM LLP (*see id.* ¶¶ 117-125). And with regard to her breach of fiduciary claim, Metcalf asserts various actions taken by Safirstein that breached his duties of care and loyalty (*id.* ¶¶ 127-133). As relevant here, some of the conduct Metcalf claims amount to a breach of Safirstein's fiduciary duties included Safirstein (1) "[r]epresenting to clients that [SM LLP] had terminated and was no longer practicing law," (2) "[d]iverting all of [SM LLP's] cases to [Safirstein's] new firm," and (3) "[r]efusing to permit Metcalf to continue working on cases which had been originated by [SM LLP] or which members of [SM LLP] had worked on during the life of the firm" (*id.* ¶ 135[c]-[e]).

### *Safirstein's Counterclaim*

On March 22, 2024, Safirstein interposed an Answer to the complaint and a counterclaim for breach of fiduciary duty against Metcalf (NYSCEF # 14 – CC). In his counterclaim, Safirstein alleges that, at the time of SM LLP's formation, Safirstein and Metcalf agreed to devote substantially all of their professional time to the firm's business and to make commercially reasonable efforts in good faith for SM LLP's benefit (*see* CC ¶¶ 14-17). Safirstein was responsible for soliciting co-counsel for SM LLP's cases, negotiating and consummating fee-split agreements,

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
Motion No. 001

Page 5 of 19

and determining legal strategy in SM LLP's cases (*id.* ¶¶ 22, 24, 26). Although Safirstein would discuss these matters with her, Metcalf did not have any responsibility for these tasks, nor did she originate client business or exercise final decision-making authority for the firm (*see id.* ¶¶ 23, 25-26). Instead, Metcalf's role at SM LLP was to prepare pre-suit demands, pleadings, and motions with Safirstein's supervision (*see id.* ¶¶ 27-31).

As alleged, Metcalf originally devoted substantially all of her professional time to SM LLP's business and, together with Safirstein and Feerick, she did so primarily in-person at SM LLP's office in Manhattan (*see* CC ¶¶ 32, 41). Things changed in March 2020 when the COVID-19 pandemic forced Safirstein, Metcalf, and Feerick to begin working remotely (*id.* ¶ 41). At that time, Metcalf reported to Safirstein and Feerick that the pandemic was causing her stress and impeding her ability to focus on work assignments (*id.* ¶ 42). Metcalf declined take a leave of absence, instead stating that she would recover and refocus (*see id.* ¶¶ 43-44).

Because Metcalf did not take a leave of absence, Safirstein assigned Metcalf to various projects between March 2020 and June 2020 (*see* CC ¶¶ 45-48, 51). Such projects included preparing (1) an analysis of potential claims in a matter referenced internally as the *Leucadia* matter, (2) books and records demands in a matter referenced internally as the *Icagen* matter, (3) an amended complaint in a matter referenced internally as the *Patriot Insurance* matter, (4) a motion to compel discovery in a matter referenced internally as the *Namenda* matter, and (5) a draft section of an opposition brief in the *Leucadia* matter (*see id.*). In each case, Metcalf failed to perform the assigned task or to meaningfully respond to requests from Safirstein that she perform her work (*id.*). Metcalf's failure to work on these assignments forced Safirstein and/or co-counsel to handle the request, thereby forcing Safirstein to deviate time away from handling other business of the firm and causing reputational harm to the firm (*id.*). By June 2020, Metcalf had also stopped handling ministerial assignments such as court filings (*id.* ¶ 52).

Metcalf purportedly admitted that she had failed to communicate adequately or work diligently on SM LLP's matters, but she reiterated that her conduct was the result of the pandemic's impact on her mental health (*see* CC ¶¶ 49-50). In reality, Safirstein maintains, at some point between the onset of the pandemic and a date in or around June 2020, Metcalf decided that she would not work diligently on her SM LLP assignments (*id.* ¶ 53). Safirstein contends that Metcalf knew that if she failed to do her assigned work, either Safirstein or co-counsel would take on the work for her (*id.*). And although she no longer intended to work diligently on behalf of SM LLP, Metcalf purportedly expected to still be compensated as if she were performing her work duties in such a manner (*id.*).

Metcalf's performance issues purportedly continued throughout the remainder of 2020 (*see* CC ¶¶ 54-58). For example, in August 2020, Safirstein assigned Metcalf to prepare a books and records demand for a matter referenced

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
**Motion No. 001**

Page 6 of 19

internally as the *Cabot Oil & Gas* matter, but Metcalf ultimately failed to perform her work and caused SM LLP to lose the litigation opportunity to a competitor law firm (*see id.* ¶ 54). Then, in September 2020, Safirstein assigned Metcalf to summarize and analyze witness testimony in a matter referenced internally as the *Valeant* matter (*id.* ¶ 55). Again, Metcalf failed to do her work, resulting in Safirstein and another attorney taking on the assignment and diverting attention away from other firm matters (*id.*). Finally, throughout October 2020, Safirstein assigned Metcalf to prepare (a) a motion to disqualify an attorney for a defendant in the *Namenda* matter, (b) a books and records demand in a matter referenced internally as the *Citigroup* matter, and (c) a motion in a federal derivative matter referenced internally as the *First Energy* matter (*id.* ¶¶ 56-58). In each instance, Metcalf failed to perform her assigned work to the detriment of the firm's business and its other attorneys' time and efforts (*see id.*). As alleged, Safirstein recorded more than 2,400 hours of billable time for SM LLP in 2020, while Metcalf only recorded 643 hours of time for the firm (*id.* ¶¶ 64-65). Still, SM LLP paid Metcalf in accordance with her 50% ownership as it had done since its formation (*id.* ¶ 66).

Safirstein avers that by November 2020, he and Feerick were "thoroughly frustrated" by Metcalf's failure to perform for SM LLP (CC ¶ 59). This resulted in Safirstein's November 10, 2020, letter advising Metcalf that he would be terminating SM LLP at the end of the year (*id.*). Metcalf responded by accusing Safirstein of acting precipitously while she suffered a personal crisis, which resulted in several telephone meetings in November and December 2020, during which the parties discussed the futures of SM LLP and Metcalf (*see id.* ¶¶ 59-63). Contrary to Metcalf's assertions in her complaint, it was only after those conversations occurred that Safirstein withdrew his request to terminate SM LLP (*see id.* ¶ 63).

Issues with Metcalf continued in 2021, at which time Metcalf had apparently concluded—erroneously, Safirstein avers—that, under New York law, every case where SM LLP was retained must be prosecuted to conclusion in the name of SM LLP and for the benefit of SM LLP's partners, including herself, even if the firm is later dissolved (CC ¶ 67). Based on this conclusion, Safirstein alleges upon information and belief, Metcalf decided that she would continue to shirk her work obligations for SM LLP and wait for Safirstein and Feerick to take actions to dissolve the firm (*id.*). This is because, Safirstein reiterates, Metcalf believed that, even if SM LLP dissolved, she would still be entitled to share in the profits of every SM LLP case and that her profit share would not be diminished as a result of any post-dissolution work for clients carried out by a successor law firm (*id.*).

In furtherance of her purported plan, Metcalf continued to ignore her work responsibilities and assignments from Safirstein (*see* CC ¶¶ 68-77). For instance, in February 2021, Metcalf failed to work on a books and records demand for a matter referenced internally as the *JPMorgan* matter, and she also disregarded a request to update the firm's website (*see id.* ¶¶ 68-69). In April 2021, Safirstein then assigned Metcalf to prepare books and records demands in a matter referenced

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
Motion No. 001

**Page 7 of 19**

7 of 19

[* 7]

internally as the *Goldman* matter, but again Metcalf failed to perform any work (*id.* ¶ 70). That same month, when SM LLP had worked to pursue an action known internally as the *Short Squeeze* matter, Metcalf disappeared and failed to perform key assignments for the contemplated lawsuit (*see id.* ¶¶ 71-72). Finally, in June 2021, Metcalf took on an assignment to review deposition transcripts in *Namenda* so that appropriate evidence designations could be inserted into a draft pretrial order (*see id.* ¶ 73). Yet she ultimately failed to complete the work (*see id.*). In each of these instances, Metcalf's conduct resulted in other attorneys taking on her assignments and, in some cases, SM LLP losing out on fees that would have otherwise been available to it (*see id.* ¶¶ 68-73).

By September 2021, Safirstein concluded that Metcalf's work would not improve, so he decided to stop giving her assignments that she was unlikely to complete (CC ¶ 74). Nevertheless, for work that was given to her throughout October 2021, Metcalf continued to shirk her work obligations to the detriment of Safirstein and others at the firm (*see id.* ¶¶ 75-76). Eventually, by November 2021, Metcalf purportedly had decided to dissolve SM LLP and she accordingly ignored a *Namenda*-related assignment and then failed to take on any meaningful work during a December 2021 meeting concerning *Namenda* in Chicago (*see id.* ¶¶ 77-78). All told, in 2021, Safirstein recorded more than 1,930 hours of billable time for SM LLP matters, while Metcalf recorded less than 579 hours of billable time (*id.* ¶¶ 80-81). SM LLP nevertheless paid Metcalf in accordance with her 50% ownership interest (*id.* ¶ 82).

Safirstein contends that, on December 13, 2021, Metcalf conjured a false allegation that he and a co-counsel with whom SM LLP frequently collaborated were hiding the existence of SM LLP cases (CC ¶¶ 83). Safirstein alleges, upon information and belief, that Metcalf made this allegations because Safirstein was communicating with her less by December 2021 (*id.*). This inevitably resulted in the accounting dispute at the center of Metcalf's complaint and the parties competing summary judgment motions (*see generally* CC ¶¶ 83-100). Safirstein now maintains that, based on the aforementioned conduct, Metcalf breached her fiduciary duty of good faith and fair dealing and undivided loyalty to Safirstein and SM LLP (*see id.* ¶¶ 101-107).

## *Parties' Arguments*

### i. *Safirstein's Partial Summary Judgment Motion*

Safirstein moves for partial summary judgment to dismiss certain portions of Metcalf's Second Cause of Action for breach of fiduciary duty (NYSCEF # 27 – MOL at 4). In particular, Safirstein seeks dismissal of Metcalf's breach of fiduciary claim insofar as it is premised on the allegations set forth in paragraph subsections 132(c), (d), and (e) of the complaint. (*id.* at 2, 4-7). Safirstein explains that Metcalf cannot prove a breach of fiduciary duty with respect to this alleged conduct because

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
Motion No. 001

**Page 8 of 19**

[* 8]

Safirstein stopped owing any fiduciary duty to Metcalf (outside of the wind-up process) once she noticed dissolution (*id. at* 4, 6).

Safirstein otherwise avers that he did not engage in any misconduct by notifying SM LLP's clients of SM LLP's dissolution (*id.* at 4). In fact, Safirstein continues, he and Metcalf would have breached their ethical duties under New York Rule of Professional Conduct 1.4 had they not notified clients of SM LLP's dissolution and Safirstein's new firm (*id.* at 4-5). Safirstein makes clear that the letters that were sent to SM LLP's former clients adhered fully with these legal principles by advising clients of SM LLP's dissolution and their rights on how to proceed with obtaining or retaining legal representation on their then-pending matters (*id.* at 6-7).

Finally, Safirstein notes, even if Metcalf had not dissolved SM LLP, he was still free to depart the firm for his own reasons and, at that point, he properly advised SM LLP's clients that they were free to transfer their files to SL, stay with Metcalf, or retain a new firm. As Safirstein continues, Metcalf's position runs counter to the longstanding principle that lawyers may not be prevented from moving to a new law firm or accepting clients from their former firms (*id.* at 5-6).

### ii. *Metcalf's Opposition and Cross-Motions for Partial Summary Judgment and to Dismiss*

Metcalf opposes Safirstein's motion and also cross moves for summary judgment declaring that she is entitled to an accounting and to dismiss Safirstein's counterclaim for breach of fiduciary duty (NYSCEF # 42 – Opp at 1).

Metcalf first addresses Safirstein's motion, arguing at the outset that Safirstein owed Metcalf a fiduciary duty even after dissolution of SM LLP (Opp at 3-5). Specifically, Metcalf explains, the partner charged with winding up affairs of the partnership—here Safirstein as SM LLP's managing partner—still retains the duty as an agent of the remaining partners with respect to the firm's liquidation (*id.* at 4). For this reason, Metcalf contends, Safirstein had a continuing duty with respect to the partnership's unfinished business and this duty did not extinguish until SM LLP's affairs had wound up (*id.* at 5).

Metcalf otherwise contends that Safirstein's motion should be denied because he has failed to demonstrate the absence of a material fact regarding his alleged scheme to divert client matters to his new law firm (Opp at 5-8). As Metcalf puts it, Safirstein's alleged scheme began prior to SM LLP's dissolution and continued after its dissolution, and thus the court should consider the entirety of Safirstein's conduct to assess Metcalf's claim for breach of fiduciary duty (*id.* at 5-6). She further clarifies that she is not alleging that Safirstein's correspondence, on its own, constitutes a breach of fiduciary duty (*id.* at 6). Rather, because Safirstein's correspondence asserted that SM LLP will no longer practice law and created

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
**Motion No. 001**

**Page 9 of 19**

9 of 19

[* 9]

ambiguity as to Metcalf's future legal practice, Safirstein made it such that SM LLP's clients' only choice was to transfer matters to SL (*id.*). Metcalf concludes that, as alleged, Safirstein's unilateral actions deprived Metcalf of her right to participate in a decision on how client matters would be handled, and, in turn, cut her out of SM LLP and diverted SM LLP's clients to his new firm (*id.* at 7). In Metcalf's view, Safirstein failed to make any prima facie showing regarding this scheme to warrant dismissal of her claims related to his scheme (*id.*).

Metcalf next shifts to her cross-motion for summary judgment, which seeks a declaration that Safirstein failed to provide an accounting of Metcalf's 50% partnership interest (Opp at 8-11). In support, Metcalf maintains that, per the undisputed record, Safirstein failed to provide a legally acceptable accounting to her because, when Metcalf demanded copies of SM LLP's monthly bank statements, Safirstein only provided one bank statement in 2021 for the month of January 2021 (*id.* at 10). And when Metcalf then demanded all documents concerning derivative matters created January 1, 2020, through the end of 2021, as well as access to SM LLP's bank accounts or monthly bank statements for 2021 and access to SM LLP's books and records, Safirstein only provided her bank statements from SM LLP's bank account and the firm's IOLA trust account (*id.* at 10-11). Metcalf further notes that it was only after dissolution began that Safirstein provided these bank statements, and he only did so in a piecemeal fashion (*id.* at 11). Finally, Metcalf contends, Safirstein has not, to date, provide any other documentation that may assist Metcalf with determining the value of her 50% interest in SM LLP (*id.*).

The final portion of Metcalf's submission focuses on her motion pursuant to CPLR 3211(a)(7) seeking dismissal of Safirstein's counterclaim (Opp at 11-15). Metcalf first avers that Safirstein's failure to seek an accounting is sufficient grounds to dismiss the counterclaim because, when an alleged wrong involves a partnership transaction, an action at law may not be maintained by one partner against another until a full accounting has occurred (*id.* at 12). Metcalf then contends that Safirstein's counterclaim should be dismissed because he cannot establish a breach of her fiduciary duty on the basis that Metcalf allegedly failed to work hard enough on behalf of SM LLP (*id.* at 13).

### iii. *Safirstein's Reply and Opposition to Cross-Motions*

In his reply, Safirstein first responds to Metcalf's opposition to his motion (NYSCEF # 52 – Reply). On this point, Safirstein notes that the material facts of his motion are not in serious dispute (*id.* at 2-3). Safirstein then reiterates that (1) once Metcalf elected to dissolve SM LLP, his duties to Metcalf were limited to dealing in good faith with respect to SM LLP's assets and liabilities during the winding up process, and (2) as a matter of law, SM LLP's cases were not assets because a client's legal matters belong to the client, not the lawyer (*id.* at 4-5).

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
**Motion No. 001**

Page 10 of 19

10 of 19

Safirstein further avers that Metcalf's contention that Safirstein deprived Metcalf of her right to participate in a decision as to how client matters would be handled is without merit (Reply at 5-6). Safirstein starts by noting that Metcalf rejected Safirstein's invitation to participate in noticing SM LLP clients of the firm's dissolution, and thus she had no basis to prevent Safirstein from complying with his ethical obligations to promptly notify SM LLP's clients of the firm's dissolution (*id.* at 6). Safirstein then revisits his letters' content, explaining that Metcalf neither disputes the accuracy of any of the letters' statements nor supports her contention that she was free to continue working on SM LLP's matters upon commencing the dissolution process (*id.* at 7).

Regarding Metcalf's cross-motion for partial summary judgment, Safirstein avers that, although there is no dispute that Metcalf is entitled to an accounting, her motion is related to what was actually a demand for books and records, not an accounting (Reply at 8). As Safirstein explains, it is improper for Metcalf to conflate an accounting discovery demand as a books and records demand, which alone warrants denial of her motion (*id.*). Safirstein then contends that Metcalf misstates the accounting information she has received, and states that she cannot deny she has been given information about all of SM LLP's contingent fee interests as of dissolution (*id.* at 8-9). Put differently, Safirstein continues, Metcalf cannot seriously deny knowing everything she is entitled to know for purposes of an accounting (*id.* at 9-10).

Turning to Metcalf's cross-motion to dismiss, Safirstein maintains that he has sufficiently alleged factual that, if proven, would establish a breach of the fiduciary duty of good faith and fair dealing (Reply at 10-11). In response to Metcalf's contention that Safirstein is merely faulting her for inadequate performance and subpar work, Safirstein makes clear that his counterclaim relates to far more egregious claims of abandonment and failure to perform (*id.* at 12-13).

### Discussion

Before the court are three separate motions: (1) a motion for partial summary judgment by Safirstein seeking dismissal of certain portions of Metcalf's breach of fiduciary duty claim; (2) a cross-motion for partial summary judgment by Metcalf on her accounting claim; and (3) a cross-motion by Metcalf to dismiss Safirstein's counterclaim. Below, the court first addresses each of these motions in turn

### I. Safirstein's Motion for Partial Summary Judgment (Second Cause of Action)

The first motion before the court is Safirstein's motion for partial summary judgment. As the movant, Safirstein must make a prima facie showing that he is entitled to judgment as a matter of law (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). If, and only if, Safirstein makes that showing, then the burden shifts to Metcalf to produce evidentiary proof, in admissible form, sufficient to establish the

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
**Motion No. 001**

**Page 11 of 19**

existence of material issues of fact that require a trial of the action (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). On a motion for summary judgment, "facts must be viewed 'in the light most favorable to the non-moving party,'" here Metcalf (*see Vega v Restani Constr. Corp*, 18 NY3d 499, 503 [2012]).

In his motion, Safirstein seeks dismissal of paragraph subsections 132(c), (d), and (e) of Metcalf's Second Cause of Action (MOL at 2, 4-7). This Second Cause of Action alleges a breach of fiduciary duty by Safirstein, and the specific subsections challenged by Safirstein pertain to his post-dissolution communications to clients regarding SM LLP's dissolution and his alleged post-dissolution freeze-out of Metcalf from working on SM LLP's cases after its dissolution (*see* compl ¶ 135[c]-[e]). As explained below, Safirstein has failed to meet his prima facie burden of establishing his entitlement to judgment as a matter of law dismissing Metcalf's claim premised on these specific paragraph subsections.

To establish a claim for breach of fiduciary duty, a plaintiff must demonstrate that the defendant (1) owed her a fiduciary duty, (2) breached that fiduciary duty, and (3) as a result of that breach, caused plaintiff damages (*see NRT N.Y., LLC v Morin*, 147 AD3d 589, 589 [1st Dept 2017]). "[L]aw partners, no less than any other business or professional partners, are bound by a fiduciary duty requiring 'the punctilio of an honor the most sensitive'" (*See Graubard Mollen Dannett & Horowitz v Moskowitz*, 86 NY2d 112, 118 [1995]). And "[a]s a fiduciary, a partner must consider his or her partners' welfare, and refrain from acting for purely private gain" (*Gibbs v Breed, Abbott & Morgan*, 271 AD2d 180, 184-185 [1st Dept 2000]; *see also Birnbaum v Birnbaum*, 73 NY2d 461, 466 [1989] [holding that fiduciaries should avoid "situations in which [his or her] personal interest possibly conflicts with the interest of those owed a fiduciary duty").

Here, Metcalf's Second Cause of Action alleges that Safirstein, as SM LLP's Managing Partner, breached his fiduciary duties to Metcalf by, among other things, (1) cutting Metcalf out of the firm's cases to avoid paying her share of the firm's profits, (2) diverting cases to other firms for purposes of taking a larger cut of fees, (3) diverting SM LLP's cases to Safirstein's new firm, SL, (4) representing to clients that SM LLP had terminated and would no longer be practicing law, and (5) refusing to permit Metcalf to continue working on cases which had been originated by SM LLP during the life of the firm (compl ¶¶ 128-132). Metcalf theorizes that Safirstein acted in breach of his fiduciary duties pursuant to a "plan" to "(i) create a narrative of him performing a majority of work on SM LLP's cases and Metcalf underperforming; (ii) scheme with Feerick to take the cases and clients away from SM LLP; and (iii) surreptitiously stockpile a pipeline of cases that Safirstein and Feerick could work on" (*see id.* ¶¶ 31-74). This alleged conduct, if later proven and uncontroverted, would plainly establish a breach of fiduciary duty by Safirstein (*see Graubard*, 86 NY2d at 120-121 ["secretly attempting to lure firm clients (even those the partner has brought into the firm and personally

650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL
Motion No. 001

Page 12 of 19

12 of 19

represented) to the new association . . . would not be consistent with a partner's fiduciary duties"])

Notably, Safirstein does not seek summary judgment dismissing the majority of Metcalf's Second Cause of Action. And he consequently proffers no evidence undermining Metcalf's contention that there was an alleged scheme by Safirstein and Feerick to freeze Metcalf out of SM LLP and, in turn, siphon the firm's clients and corresponding fees for himself (*cf.* Deft 19-a ¶¶ 6-17 [focusing only on correspondence to SM LLP's clients concerning firm dissolution and Metcalf's demand for documents]; Safirstein aff ¶¶ 4-6 [similar]). This failure by Safirstein to submit any evidence challenging Metcalf's allegations alone warrants denial of a motion for summary judgment (*Gentile v 2400 Johnson Ave. Owner, Inc.*, 224 AD3d 542, 543 [1st Dept 2024] [affirming denial of motion for summary judgment on claim for breach of fiduciary duty where defendants "failed to submit any evidence in admissible form in support of their cross-motion" and thus failed to make a prima facie showing of entitlement to summary judgment]).

Safirstein nevertheless contends that dismissal is warranted here because there is no dispute of material fact that the specific paragraph subsections of Metcalf's Second Cause of Action that he is challenging all relate to post-dissolution conduct that is not actionable as a matter of law (MOL at 4-7). The court disagrees.

It is true, as the parties agree, that upon dissolution of a partnership, the fiduciary obligations between partners cease, even if the partnership itself does not terminate until its affairs are wound up (*see 6D Farm Corp. v Carr*, 63 AD3d 903, 906 [2d Dept 2009], citing *Matter of Silverberg (Schwartz)*, 81 AD2d 640, 641 [2d Dept 1981]; *Morris v Crawford*, 304 AD2d 1018, 1021 [3d Dept 2003] [same]).[6] And if Metcalf were attempting pursue a breach of fiduciary duty claim solely based on Safirstein's correspondence with SM LLP's clients or his post-dissolution engagement with those clients, Safirstein's motion may have more bite. However, that is not Metcalf's claim. Rather, as explained above, Metcalf has alleged a scheme by Safirstein that began prior to SM LLP's dissolution and purportedly continued during the dissolution process (compl ¶¶ 31-74, 128-132). As a result, Safirstein's attempt to dismiss only certain portions of Metcalf's claim entirely misses the mark.

Undeterred, Safirstein separately contends that the purportedly breaching conduct alleged in paragraph subsections 132(c), (d), (e) are not actionable because Safirstein was merely acting pursuant to an ethical obligation to notify SM LLP's clients of the firm's dissolution (*see* N.Y. Rule of Prof. Conduct 1.4, cmt. 7[c] ["When

---

[6] That said, as both parties also acknowledge, there is an exception to this rule, which provides that a partner retains a continuing duty regarding the windup of the partnership's unfinished business (*see MacCartney v O'Dell*, 2016 WL 815279, at *4 [SD NY, Feb. 29, 2016, No. 14-cv-3925 (NSR)]). At least some of Metcalf's Second Cause of Action appears to implicate this specific fiduciary duty (*see* compl ¶ 132[f]-[h]).

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
**Motion No. 001**

a law firm has decided to cease operations as a going concern, the firm or the lawyers who have primary or substantial responsibility for current clients or for performing material legal services on one or more particular active matters must give prompt notice to all potentially affected clients of the firm . . . of the decision to cease operations"]). And regardless, Safirstein continues, SM LLP's cases belonged to its clients, not the firm, and the clients were free to move their cases to SL upon learning of SM LLP's dissolution (*see* MOL at 5). True as these legal principles may be, Safirstein's contentions again ignore Metcalf's actual allegations.

There is no meaningful dispute that Safirstein had an obligation to inform clients of SM LLP's dissolution, and that he was also entitled to inform SM LLP's clients of his new practice (*cf. Graubard*, 86 NY2d at 120 ["As a matter of ethics, departing partners have been permitted to inform firm clients with whom they have a prior professional relationship about their impending withdrawal and new practice, and to remind the client of its freedom to retain counsel of its choice"]). And, contrary to Metcalf's assertions, SM LLP's matters belong to its clients, not the firm (*see In re Thelen LLP*, 24 NY3d 16, 28 [2014] ["client matters are not partnership property"]; *Parker Waichman, LLP v Mauro*, 215 AD3d 869, 872 [2d Dept 2023] ["Further, '[a] law firm does not own a client or an engagement, and is only entitled to be paid for services actually rendered," particularly because "a client's legal matter belongs to the client, not the lawyer'"]).[7] But as explained, Metcalf's breach of fiduciary duty claim does not hinge solely on Safirstein's required communications with, and subsequent solicitation of, SM LLP's clients. Rather, the conduct at-issue in Safirstein's motion, as alleged, is merely one link in the broader scheme to cut Metcalf out of SM LLP and take its cases for himself. And because Safirstein ultimately fails to offer any evidence challenging Metcalf's contention that such a scheme existed, there is no basis to conclude at this juncture that the allegations set forth in paragraph subsections 132(c), (d), and (e) must be dismissed.

In any case, even assuming Safirstein did make a prima facie showing of his entitlement to judgment dismissing certain portions of Metcalf's Second Cause of Action, the court would still conclude that dismissal is not warranted. Indeed, not only are there numerous thorny factual issues already arising from the record, but it also appears from Metcalf's submission that there are facts essential to justify

---

[7] In her opposition, Metcalf invokes a so-called "unfinished business doctrine" to argue that New York law requires law partners to continue representing clients through the conclusion of their matters (*see* Opp at 7). That doctrine provides that "the business of a partnership that is unfinished on the date the partnership dissolves is an asset of the partnership and must be concluded for the benefit of the dissolved partnership" (*see Dev. Specialists, Inc. v Akin Gump Strauss Hauer & Feld LLP*, 480 BR 145, 160 [Bankr SD NY, July 18, 2012], *revd in part, vacated in part sub nom, In re Coudert Bros., LLP*, 574 Fed Appx 15 [2d Cir 2014])). Importantly, however, the Court of Appeals in *In re Thelen* explicitly rejected that client matters constitute firm property for purposes of the "unfinished business doctrine" (*see In re Thelen*, 24 NY3d at 28-29 [explaining that "[b]ecause client matters are not partnership property, the trustees' reliance on Partnership Law § 4(4) is misplaced"]).

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
Motion No. 001

**Page 14 of 19**

14 of 19

opposition that may exist but cannot be stated at this time (*see* CPLR 3212[f]). Thus, because discovery in this action has only just commenced, Safirstein's motion is, at best, premature and will be denied on this alternative basis as well (*see* *Guzman v City of New York*, 171 AD3d 653, 653 [1st Dept 2019] [affirming denial of summary judgment as premature where "[n]o discovery had been conducted" prior to defendant's motion]).

In short, Safirstein's motion for partial summary judgment is denied. At the court's discretion, such denial is without prejudice to renew at the conclusion of discovery.

## II. Metcalf's Motion for Summary Judgment (First Cause of Action)

The next motion before the court is Metcalf's cross-motion seeking a declaration that she is entitled to an accounting by Safirstein to determine the value of her 50% interest in SM LLP (Opp at 8-11). Metcalf maintains that she has established her entitlement to such a declaration based on her showing that Safirstein provided incomplete responses to her demands for documents after she dissolved SM LLP (*id.* at 10-11). Safirstein counters that Metcalf misstates the accounting information she has received and otherwise fails to explain how Safirstein's responses to her demands were deficient (Reply at 8-10).

Under New York Partnership Law, a cause of action for an accounting accrues upon a dissolution of the partnership (*see* Partnership Law § 74; *see also* *Pappas v B & G Holding Co.*, 208 AD3d 1105, 1106 [1st Dept 2022] ["The right to an account of his interest shall accrue to any partner, or his legal representative, as against the winding up partners or the surviving partners . . . at the date of dissolution, in the absence of agreement to the contrary"]). Generally, courts "will not intervene to vindicate a partner's right to an accounting in the absence of a showing that a demand for one was made and rejected by the partner in possession of the books, records, profits or other assets of the partnership" (*Kaufman v Cohen*, 307 AD2d 113, 124 [1st Dept 2003]). Put differently, for a plaintiff to pursue an accounting claim following a dissolution, her or she must show both (1) a demand for a post-dissolution accounting, and, critically, (2) a failure or refusal to comply with the accounting demand (*see* *Adam v Cutner & Rathkopf*, 238 AD2d 234, 241 [1st Dept 1997]).

At the outset, it not evident from the affirmations and exhibits submitted in connection with Metcalf's cross-motion that she has made a prima facie showing that Safirstein denied or improperly responded to her purported accounting demand. There is, of course, no dispute that Metcalf triggered SM LLP's dissolution on December 14, 2021, and she is entitled to an accounting upon demand (Pltf 19-a ¶¶ 19, 23; Metcalf aff ¶¶ 54, 76; Deft 19-a Resp ¶ 23). There is also no dispute that, as part of her Dissolution Notice, Metcalf circulated a list of demands for certain books and records, as well as certain monthly bank statements, concerning

650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL
Motion No. 001

Page 15 of 19

15 of 19

SM LLP and its matters (Pltf 19-a ¶¶ 16-17, 20; Metcalf aff ¶¶ 54, 75; Dissolution Notice at 3-4). On December 29, 2021, Safirstein responded by circulating monthly bank statement for SM LLP's bank account for 2021 (Pltf 19-a ¶ 21; Metcalf aff ¶¶ 56, 77; Deft 19-a Resp ¶ 21). The parties seemingly agree that the documents that Safirstein circulated on December 29, 2021, did not account for the majority of documents requested by Metcalf (Pltf 19-a ¶ 21; Deft 19-a Resp ¶ 21).

Notably, however—and contrary to the inference Metcalf would have this court improperly draw in her favor—this production was not made in isolation. Rather, on December 20, 2021, Safirstein suggested that SM LLP perform one accounting using a "mutually agreed accountant" at SM LLP's expense (Deft Resp ¶ 24; Dec. 20, 2021 Ltr at 3). Yet Metcalf rejected this proposal as premature (Dec. 21, 2021 Ltr at 2). And it was seemingly only after Metcalf rejected Safirstein's proposal that he then made the December 29, 2021, production of monthly bank statements (*see* Metcalf aff ¶ 56). Given these facts, it is unclear how, if at all, Safirstein *rejected* Metcalf's demand for an accounting—as opposed to Metcalf merely being unsatisfied with the information with which he eventually provided (*see* Metcalf aff ¶ 78)—prior to her seeking judicial intervention. In the absence of some indication in the record that Safirstein *rejected* her demand, summary judgment on Metcalf's accounting claim is unwarranted at this time (*see NWM Capital, LLC v Scharfman*, 144 AD3d 414, 415 [1st Dept 2016] ["Plaintiff failed to state a cause of action for an accounting, given the lack of any allegations that a demand for an accounting was refused"]).

Nevertheless, even if Metcalf had made a prima facie showing of her entitlement to judgment as a matter of law, her motion would still be denied because Safirstein has sufficiently raised triable issues of fact that, at minimum, require the parties to first engage in discovery. As noted above, Safirstein initially responded to Metcalf's Dissolution Notice by suggesting that SM LLP perform one accounting using a "mutually agreed accountant" at SM LLP's expense, yet Metcalf rejected this approach (Deft Resp ¶¶ 24-25). Later, on December 29, 2021, Safirstein sent Metcalf monthly bank statements for SM LLP's bank accounts for 2021. Then, Safirstein sent Metcalf a letter on January 19, 2022, requesting her input on a list of 35 pending and prospective matters in which SM LLP had a fee interest but never received a response (*see* Deft Resp ¶¶ 26-28; Jan. 19, 2022 Ltr at 1-2; Safirstein opp aff ¶ 5). Safirstein has therefore, at minimum, marshalled evidence questioning whether he rejected Metcalf's demand for an accounting.

The fact that the basis for Metcalf's accounting claim appears to actually be that Safirstein's responses were inadequate does not warrant a different conclusion regarding summary judgment. As the current record indicates, Metcalf is taking the position that the information provided by Safirstein to date is incomplete and does not give a full accounting of SM LLP's affairs (Metcalf aff ¶¶ 77-78). Safirstein, by contrast, maintains that Metcalf has received (1) true and complete copies of SM LLP bank statements from January 2021 to April 2024, which purportedly reflect

650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL
Motion No. 001

Page 16 of 19

16 of 19

[* 16]

all of SM LP transactions, (2) an accounting of each SM LLP matter transferred to SL, (3) information concerning the overall settlement amount obtained on former SM LLP matters and related fee apportionment between SM LLP and SL, and (4) unfettered access to SM LLP's accountants and tax returns (*see* Deft 19-a Resp ¶¶ 30-34; Safirstein opp aff ¶¶ 4-6). Safirstein further retorts that Metcalf has not explained what additional documents she needs to assist with her understanding of SM LLP's bank statements (Deft 19-a Resp ¶ 35). Given these sharply conflicting accounts of what information Metcalf has received, there are plainly still questions of fact as to the sufficiency of Safirstein's production of documents, and what, if any, additional information is needed. These factual disputes, at minimum, render a motion for summary judgment premature (*see generally* CPLR 3212[f]) and, at any rate, they defeat any purported prima facie showing made by Metcalf in support of her cross-motion for summary judgment.

In sum, given the sharp dispute of material facts present in this pre-discovery record, Metcalf's motion for partial summary judgment on her accounting claim is denied. Again, this denial is without prejudice to renew at the conclusion of discovery.

### III. Metcalf's Cross-Motion to Dismiss Counterclaims

The final motion before the court is Metcalf's cross-motion, pursuant to CPLR 3211(a)(7), to dismiss Safirstein's counterclaim for breach of fiduciary duty. In considering this motion, the court "must accept as true the facts as alleged in the [counterclaim] and submissions in opposition to the motion, accord [Safirstein] the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory" (*Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc.*, 20 NY3d 59, 63 [2012]). Whether Safirstein can ultimately establish his allegations should not be considered (*EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]).

As previously noted, to state a claim for breach of fiduciary duty, a claimant must allege that "(1) defendant owed them a fiduciary duty, (2) defendant committed misconduct, and (3) they suffered damages caused by that misconduct" (*N.Y. Mar. & Gen. Ins. Co. v Wesco Ins. Co.*, 213 AD3d 461, 462 [1st Dep 2023]). One such obligation from which a breach of fiduciary duty claim can arise is the duty of loyalty and good faith (*see Beach v Touradji Capital Mgt., LLP*, 144 AD3d 557, 562 [1st Dept 2016]; *Gibbs*, 271 AD2d at 184 ["members of a partnership owe each other a duty of loyalty and good faith"]).

In his counterclaim, Safirstein alleges the existence of a fiduciary duty between Metcalf and himself by virtue of their partnership, as well as Metcalf's purported agreement to devote substantially all of her professional time to the SM LLP's business and make commercially reasonable efforts in good faith for SM LLP's benefit (*see* CC ¶¶ 14-17). Safirstein then details how Metcalf allegedly made

650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL
Motion No. 001

Page 17 of 19

17 of 19

a concerted effort to shirk her responsibilities and obligations to SM LLP and Safirstein but still reap the benefits of other attorneys' work and efforts at the firm's expense (*see id.* ¶¶ 45-48, 51-59, 64-65, 67-81). Finally, as alleged, Safirstein maintains that Metcalf's breaching conduct had various detrimental impacts on the firm's operations and business, such as forcing Safirstein to complete Metcalf's work to detriment of his own firm obligations, causing SM LLP to lose out on new business, and lowering fee shares in matters the firm was handling (*see id.* ¶¶ 46-48, 53-58, 68, 70-73, 107). These allegations, accepted as true, sufficiently allege that Metcalf breached her fiduciary duty to Safirstein by failing to perform, in good faith, her obligations and duties on behalf of SM LLP in furtherance solely of her own pecuniary gains and directly at the firm's expense (*cf. Wilf v Halpern*, 194 AD2d 508, 508 [1st Dept 1993], *lv denied* 82 NY2d 846 [1993] [holding that, where partnership agreement required unanimity regarding decision, a partner's repeated refusal to withhold consent solely for personal gain to obtain a cash buyout, amounted to a breach of a contractual covenant of good faith and fair dealing governing the partner's fiduciary obligations to each other]; *see generally Birnbaum*, 73 NY2d at 466 ["it is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect," which is an "inflexible" rule "barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty"]).

None of the contentions raised by Metcalf in support of dismissal alter this conclusion. Metcalf first avers that Safirstein's claim should be dismissed because he failed to seek an accounting in connection with his claim (Opp at 13). Specifically, Metcalf contends that an action at law may not be maintained by one partner against another until an accounting has taken place (*see* Opp at 12, citing *Stark v Goldberg*, 297 AD2d 203 [1st Dept 2002]). As a preliminary matter, although it is true that, as the cases cited by Metcalf hold, "an action at law may not be maintained by one partner against another for any claim arising out of the partnership until there has been a full accounting" (*see Metzger v Goldstein*, 139 AD3d 918, 920 [2d Dept 2016]), it is also the case that if a partnership is "at an end, and all of the claims and counterclaims alleged between the partners have accrued," the concerns of "piecemeal adjustments of the amount due to each partner" after an accounting is largely obviated (*see Seiden v Gogick, Byrne & O'Neill*, 278 AD2d 302, 304 [2d Dept 2000]). That seems to be the case here. Indeed, the only issue regarding Metcalf's accounting claim is what information is required from Safirstein, not whether an accounting is warranted. In any case, as the *Metzger* court recognized, this purported "general rule" does not come into play if "the alleged wrong concerns a partnership transaction which may be determined without an examination of partnership accounts" (*Metzger*, 139 AD3d at 920). And here, Safirstein's allegations do appear related to conduct that can be assessed and addressed without examination of the partnership accounts.

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
Motion No. 001

Page 18 of 19

Metcalf's second contention fares no better. In essence, Metcalf argues that Safirstein's claim is nothing more than a complaint that her work was subpar and inadequate, which does not constitute a breach (Opp at 13). Metcalf, however, misconstrues the nature of Safirstein's allegations. Safirstein is not, as Metcalf suggests, contending that Metcalf was simply inadequate in her work performance. Rather, when accepted as true and with all reasonable inferences are drawn, Safirstein's counterclaim paints a picture of a partner who intentionally and improperly shirked her agreed-upon obligations and duties to her firm and her partner and did so for purely personal pecuniary gain (*see* CC ¶¶ 45-48, 51-59, 64-65, 67-81). Whether Safirstein can ultimately prove his allegations is yet to be seen. But for purposes of resolving Metcalf's motion, Safirstein has sufficiently stated a claim for relief.

Metcalf's motion to dismiss Safirstein's counterclaims is denied.

### Conclusion

For the foregoing reasons, it is hereby

ORDERED that defendant Peter Safirstein's motion for partial summary judgment is denied; and it is further

ORDERED that plaintiff Elizabeth Metcalf's cross-motion for summary judgment and cross-motion to dismiss are denied; and it is further

ORDERED that counsel for plaintiff shall serve a copy of this decision and order, along with notice of entry, on defendants within ten days of this filing.

This constitutes the Decision and Order of the court.

| 12/11/2024 | | MARGARET A. CHAN, J.S.C. |
| --- | --- | --- |
| DATE | | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
| --- | --- | --- | --- |
| | ☐ GRANTED ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**650777/2024 METCALF, ELIZABETH vs. SAFIRSTEIN METCALF, LLP ET AL**
**Motion No. 001**

Page 19 of 19

[* 19]

19 of 19